```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION


CUSTINA GRANGER                                       PLAINTIFF

VS.                         CIVIL ACTION NO. 5:05-cv-230(DCB)(JMR)

SECURITAS SECURITY SERVICES
USA, CO.[1]; KENNETH GRAVES
APARTMENTS; AND RONALD PROMISE                       DEFENDANTS
```

### MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant Securitas Security Services USA, Inc. ("Securitas")'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Litigation, and to Compel Arbitration **(docket entries 6 and 8)**. After careful consideration of the motion and response, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

In January of 2005, Custina Granger ("Granger") filed a Charge of Discrimination with the EEOC, alleging that she was subjected to sexual harassment while working as a security guard for Securitas. She further alleged that she was denied assignments and discharged from her position, constituting gender discrimination under Title VII of the Civil Rights Act of 1964. The EEOC issued Granger a right to sue letter on April 29, 2005. On July 27, 2005, the plaintiff filed an action against the defendants in the Circuit Court of Adams County, Mississippi, and amended her complaint on

---

[1] The correct name of the defendant is Securitas Security USA, Inc.

November 23, 2005.  On December 21, 2005, Securitas removed the action to this Court on the basis of federal question jurisdiction, and now seeks enforcement of an arbitration agreement between the parties.

The plaintiff's Amended Complaint names as defendants Securitas, Kenneth Graves Apartments, and Ronald Promise.  Granger states that she was hired by Securitas in April of 2004 as a security guard for the Kenneth Graves Apartments in Natchez, Mississippi.  Amended Complaint, ¶ 7.  She alleges that shortly after she began work, her supervisor, Ronald Promise, began to harass her by making sexual advances and requests.  ¶ 9.  She further alleges that as a result of her refusal of his advances, she was denied a promotion by Promise.  ¶ 12.  She also alleges that she was fired by Securitas in retaliation for her complaints of harassment.  ¶ 13.  Count I of the Amended Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges deprivations of equal protection and due process under the Fifth and Fourteenth Amendments of the United States Constitution.  ¶ 16.  Count II alleges a conspiracy to deprive the plaintiff of her equal protection rights, and is brought pursuant to 42 U.S.C. § 1985.  ¶ 25.  Count III alleges that the defendants committed the state law tort of intentional infliction of emotional distress.  ¶ 31.

The Federal Arbitration Act ("FAA") does not provide an independent source of federal jurisdiction, and an independent basis for jurisdiction must exist before a federal court may assume jurisdiction.  See Moses H. Cone Memorial Hospital v. Mercury

Construction Corp., 460 U.S. 1, 26 n.32 (1983). Securitas alleges that federal jurisdiction is proper under 28 U.S.C. § 1331 because the Court has original federal question jurisdiction over the plaintiff's claims brought pursuant to 42 U.S.C. §§ 1983 and 1985. Notice of Removal, ¶¶ III-IV.

The next question to be determined is whether federal law (the FAA) or state law applies to Securitas' motion to compel arbitration. The FAA, 9 U.S.C. §§ 1-14 provides in part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, the FAA only applies to written provisions of a contract "evidencing a transaction involving commerce." This provision extends the reach of the FAA to all contractual activity which facilitates or affects commerce even tangentially. See Acre v. Cotton Club of Greenville, Inc., 883 F.Supp. 117, 119 (N.D. Miss. 1995). The Supreme Court has noted the phrase "evidencing a transaction involving commerce" extends the reach of the FAA to the full extent of Congress' power to regulate under the Commerce Clause of the United States Constitution. See Allied-Bruce Terminix Co. v. Dobson, 513 U.S. 265 (1995). "Commerce" in this context refers to interstate or foreign commerce. Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276, 1280 (5th Cir. 1994).

In deciding whether the requisite degree of interstate commerce is involved, courts have looked to a variety of factors.

In the context of employment contracts, the case of <u>Jones v. Tenet Health Network, Inc.</u>, 1997 WL 180384 (E.D. La. April 7, 1997) is illustrative.  There, the district court found the agreement to arbitrate evidenced a transaction involving interstate commerce because the hospital where the plaintiff worked received services and goods from out-of-state vendors, treated out-of-state patients and received payment for services rendered from out-of-state insurance carriers.  <u>Id</u>. at *2.  In the case at bar, the only information before the Court relevant to this inquiry is that Securitas is a foreign corporation and that the plaintiff was employed as a security guard in Natchez, Mississippi.  The fact that the employer is an out-of-state corporation is not in itself enough to show that the transaction "involved commerce."  <u>See</u>, e.g., <u>Bernhardt v. Polygraphic Co. of America, Inc.</u>, 350 U.S. 198, 200-01 (1956)(requiring showing that employee was working "in" commerce, was producing goods for commerce, or was engaging in activity that affected commerce).

Ordinarily, the party seeking to compel arbitration alleges that the arbitration agreement involves interstate commerce, and the court makes an evidentiary determination concerning the existence of an "interstate nexus" as required by the FAA.  <u>See</u> <u>United House of Prayer v. L.M.A. International, Ltd.</u>, 107 F.Supp.2d 227 (S.D. N.Y. 2000).  In the absence of an "interstate nexus," the parties' disputes are not subject to the FAA, and the Court must look to state jurisprudence specifically addressing arbitration issues under state law.  <u>See</u> <u>McBride v. Mursimco, Inc.</u>, 2004 WL

4

1459565 *2 (E.D. La. June 28, 2004). In the past, Mississippi law diverged from federal law in allowing revocation of arbitration clauses. See Arce v. Cotton Club of Greenville, Inc., 883 F.Supp. 117 (N.D. Miss. 1995)(citing McClendon v. Shutt, 237 Miss. 703, 115 So.2d 740, 741 (1959); Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co., 205 Miss. 96, 38 So.2d 448, 452 (1949)). More recently, however, the Mississippi Supreme Court "has recognized that arbitration is favored and firmly embedded in both our federal and state laws." Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513 (Miss. 2005). "Consistent with federal law, [Mississippi] case law now clearly emphasizes the favored status of arbitration." Id. In addition, Mississippi now follows federal case law which interprets the FAA, even when the FAA does not apply, "because the case law is based on sound principles which are easily transferable to non-interstate commerce litigation." University Nursing Associates, PLLC v. Phillips, 842 So.2d 1270, 1276 n.6 (Miss. 2003). Consequently, the Court finds it unnecessary to resolve the "interstate nexus" question because the application of federal law or state law would yield the same result.

   Next, the Court must determine if the claims raised in the plaintiff's complaint are arbitrable. The plaintiff's Amended Complaint contains three counts. Count I alleges deprivations of her constitutional rights under 42 U.S.C. § 1983. Specifically, she asserts that her employer violated her rights to equal protection of the laws under the Fourteenth Amendment, and her due

process rights of property (her employment position) and liberty (her reputation as an honest employee) under the Fifth and Fourteenth Amendments.  Amended Complaint, ¶¶ 15-22.  Count II alleges a conspiracy to deprive her of equal protection of the laws under the Fourteenth Amendment pursuant to 42 U.S.C. § 1985(3). Amended Complaint, ¶¶ 23-26.   Count III alleges intentional infliction of emotional distress.  Amended Complaint, ¶¶ 27-31.

All of the plaintiff's claims are employment-related.  The United States Supreme Court has held that employment contracts, except those involving transportation workers, are not exempt from the FAA's reach.  <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 119 (2001).  In addition, both the Supreme Court and the Fifth Circuit have made clear that employment discrimination claims, such as those at issue here, can be subjected to mandatory arbitration under the FAA.  <u>Id</u>. at 110; <u>Alford v. Dean Witter Reynolds, Inc.</u>, 939 F.2d 229, 230 (5th Cir. 1991).  The FAA expresses a strong national policy in favor of arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  <u>Southland Corp. v. Keating</u>, 465 U.S. 1, 10 (1983); <u>Mouton v. Metropolitan Life Ins. Co.</u>, 147 F.3d 453, 456 (5th Cir. 1998).

The Fifth Circuit has directed that courts are to perform a two-step inquiry to determine whether parties should be compelled to arbitrate a dispute.  <u>OPE Int'l LP v. Chet Morrison Contractors, Inc.</u>, 258 F.3d 443, 445 (5th Cir. 2001).  First, the court must determine whether the parties agreed to arbitrate the dispute.  <u>Id</u>.

In conducting this inquiry, the court must determine whether a valid agreement to arbitrate exists, and whether the dispute in question falls within the scope of that arbitration agreement. Id.; Penzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998). Once the court finds that the parties agreed to arbitrate the claims, it must consider whether any federal statute or policy renders the claims nonarbitrable. OPE Int'l, 258 F.3d at 446.

The parties do not dispute that at the time she was hired by the defendant, the plaintiff executed an Acknowledgment of Receipt of and Agreement to Securitas' Arbitration Program ("Acknowledgment of Receipt"), which states, in pertinent part:

> I have received a copy of the Securitas Arbitration Program which sets forth the terms of the program. I understand that compliance with the Company's Arbitration Program is a condition of my employment. This program provides that disputes between Securitas and myself shall be resolved through binding arbitration rather than by a judge or jury, which is waived by both parties.

(Acknowledgment of Receipt). The Securitas Arbitration Program provides that:

> Any claims or controversies ... an associate may have against the Company, or against its officers, directors, associates or agents in their capacity as such, must be resolved by arbitration instead of the courts, whether or not such claims arise out of an associate's employment (or termination). The claims covered include, but are not limited to, claims for wages or other compensation due; ... claims for harassment, discrimination (including but not limited to race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability) ... and claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance ... This provision includes, but is not limited to, Title VII of the Civil Rights Act of 1964 ... and comparable state statutes.

(Arbitration Program, § II at p. 9).

Granger does not dispute that her claims come within the scope of the arbitration clause. Instead, she contends that the arbitration agreement was not valid. In addressing this question, the Court applies ordinary state-law principles that govern the formation of contracts, but in doing so gives due regard to the federal policy favoring arbitration. <u>McGee v. Home Buyers Warranty Corp. II</u>, 45 F.3d 981, 984 (5th Cir. 1995). The party resisting arbitration has the burden of demonstrating that the particular arbitration provision is unenforceable. <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 26 (1991).

Granger claims that "[s]he simply signed a statement that she has [<u>sic</u>] received the arbitration program handbook." Plaintiff's Response, ¶ 2. However, the Acknowledgment of Receipt that Granger signed contains three provisions: (1) acknowledgment of receipt of the arbitration handbook; (2) acknowledgment that her employment by Securitas is conditioned on her compliance with the arbitration program; and (3) mutual waiver of right to trial by judge or jury. Granger admits as much when she states:

> At the inception of Plaintiff's employment, Plaintiff executed a written agreement to arbitrate and [<u>sic</u>] all claims arising from her employment relationship with Securitas in accordance with the Securitas Arbitration Program. Plaintiff does not dispute signing the agreement as part of her condition for employment as alleged by the Defendant.

Plaintiff's Response, ¶ 2. Furthermore, Granger acknowledged that her employment was conditioned on her acceptance of the arbitration agreement; therefore, her acceptance of the job manifested her

assent to be bound by the arbitration program.  See May v. Higbee Company, 372 F.3d 757 (5th Cir. 2004)(applying Mississippi law that a party's conduct may manifest assent to an agreement).

Granger next challenges the arbitration agreement as being both procedurally and substantively unconscionable.  Arbitration agreements are not inherently unconscionable.  Smith v. Equifirst Corp., 117 F.Supp.2d 557, 564 (S.D. Miss. 2000).  The question of procedural unconscionability is whether the insertion of the arbitration provision into the contract was done in a procedurally unfair manner.  To demonstrate procedural unconscionability, the party resisting the arbitration agreement must establish a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity of sophistication or bargaining powers of the parties, or lack of opportunity to study the contract and inquire about the contract terms.  Pridgen v. Greentree Financial Servicing Corp, Inc., 88 F.Supp.2d 655, 657 (S.D. Miss. 2000).

Granger contends that the arbitration agreement was procedurally unconscionable because:

> No explanation was given to the Plaintiff regarding the ultimate ramifications of this arbitration program.  The Plaintiff was in a completely inferior bargaining position having no understanding of arbitration. Furthermore no proper procedures were utilized by the Defendant to properly educate the Plaintiff regarding their Program.

Plaintiff's Response, ¶ 2.  The plaintiff does not contend that at the time she signed the Acknowledgment of Receipt she was not permitted to read or study the Acknowledgment and the Arbitration

9

Program brochure, or that she inquired about, or requested an explanation of, the terms of those documents. Nor does she contend that the agreement to arbitrate was buried in fine print or otherwise inconspicuous. In fact, the brochure titled "The Securitas Arbitration Program" clearly explains what arbitration is, how it works, and how it is related to the employer/employee relationship. Both the brochure and the Acknowledgment of Receipt, a separate document, are easy to read and contain no complex legalistic language.

As for the plaintiff's assertion that she was in an inferior bargaining position, "mere inequality in bargaining power ... is not a sufficient reason" in itself to hold that an arbitration provision is unenforceable. Gilmer, 500 U.S. at 33. Moreover, Granger always had the option to simply "refrain from contracting at all." Pridgen, 88 F.Supp.2d at 658. Granger further contends that she did not understand the arbitration provision. Mississippi law clearly precludes parties from disavowing written contracts for alleged failures of their own making to read or understand them. Absent fraud, "a person cannot avoid a signed, written contract on the grounds that he did not read it." Hicks v. Bridges, 580 So.2d 743, 746 (Miss. 1991). Further, a party to a contract cannot escape its obligations on grounds "that the contents thereof were not explained." McCubbins v. Morgan, 23 So.2d 926, 927 (Miss. 1945). As the Mississippi Supreme Court has stated:

> To permit a party when sued on a written contract to admit that he signed it, but to deny that it expresses the agreement he made or to allow him to admit that he signed it, but did not read it or know its stipulations,

would absolutely destroy the value of all contracts. Hicks, 580 So.2d at 746 (citations omitted).  In the context of arbitration agreements, the Fifth Circuit has emphasized:

> Under elementary principles of contract law, one is presumed to have read a contract that one signs: "A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it."

In re Cajun Elec. Power Co-op, Inc., 791 F.2d 353, 359-60 (5th Cir. 1986)(quoting Smith v. Leger, 439 So.2d 1203, 1206 (La.App. 1983)(additional citations and footnote omitted).  In fact, the document that Granger signed was clearly titled "Acknowledgment of Receipt of and Agreement to Securitas' Arbitration Program."  The plaintiff has failed to show that the arbitration agreement is procedurally unconscionable.

Granger also states in her Response that the arbitration agreement is substantively unconscionable.  Substantive unconscionability exists only when the terms of a contract are "oppressive."  "That is, if the arbitration clause, as written, would necessarily operate in such a way as to have an unconscionable effect, it is unconscionable." Pridgen 88 F.Supp.2d at 658.  However, Granger's Response merely alleges "substantive unconscionability" without any allegations to support her claim.  She does not claim that any of the terms of the arbitration agreement are oppressive, nor does she suggest how any of the terms could be considered unconscionable.  The plaintiff has failed to show that the arbitration agreement is substantively unconscionable.

The Court therefore finds that a valid agreement to arbitrate exists. Next, the Court considers whether the plaintiff's claims fall within the scope of the arbitration agreement. As noted previously, the plaintiff does not challenge the defendant's assertion that her employment-related claims are within the scope of the agreement; therefore, the Court finds that the dispute falls within the scope of the arbitration agreement, and that the parties agreed to arbitrate the dispute.

The Court's inquiry does not end here, however, for the Court must also consider whether any federal statute or policy renders the plaintiff's claims nonarbitrable. OPE Int'l, 258 F.3d at 446. Employment discrimination claims may properly be compelled to arbitration where, as here, they are within the scope of the arbitration agreement. See Gilmer v. Interstate/Johnson Land Corp., 500 U.S. 20 (1991). Even Title VII claims can be subject to compulsory arbitration. Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991).

Since Granger's intentional infliction of emotional distress claim relates to her employment, it is encompassed by the arbitration agreement. See McBride v. Mursimco, Inc., 2004 WL 1459565 (E.D. La. June 28, 2004)(in which plaintiff alleged intentional infliction of emotional distress in connection with retaliation claim); Burton v. Citigroup, 2004 WL 1285033 *5 (N.D. Tex. June 9, 2004)(in which plaintiff alleged intentional infliction of emotional distress in connection with racial discrimination and sexual harassment claims).

12

As for Granger's claim pursuant to 42 U.S.C. § 1983, the Court notes at the outset that in McDonald v. City of West Branch, 466 U.S. 284, 290 (1984), the Supreme Court held that § 1983 claims are nonarbitrable because arbitration "cannot provide an adequate substitute for a judicial proceeding" in achieving § 1983's objectives. However, where the plaintiff's factual allegations, if proved, would come under the specific terms of Title VII, then Title VII would provide the plaintiff's exclusive remedy unless she alleges an independent basis for her § 1983 claim. See Barwick v. City of Aurora Animal Care Division, 1992 WL 455488 (D. Colo. June 12, 1992).

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution."[2] Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992). Section 1983 does not create any substantive rights; it creates only a remedy for the violation of a substantive federal right. Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 28 (1981). Thus, § 1983 is not available

---

[2] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

when "the governing statute provides an exclusive remedy for violations of its terms." Id. (citations omitted).

In Count I of her Amended Complaint, Granger alleges that she was denied equal protection of the laws. The Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In Count I, the plaintiff claims that she was subject to harassment, denied a promotion and discharged from her position because of her gender. Granger's claims clearly fall within the expansive reach of Title VII. The "civil rights" which the plaintiff claims were violated are rights created by Title VII, and would not be cognizable under § 1983, since Title VII provides the exclusive remedy for violations of its terms. Irby v. Sullivan, 737 F.2d 1418, 1429 (5th Cir. 1984).

Granger's equal protection claim, which the Court construes as a Title VII claim, is thus not rendered nonarbitrable by any federal statute or policy. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 628 (1985).

Nevertheless, the plaintiff may still pursue a § 1983 claim in addition to her Title VII claim if she alleges an independent basis for her § 1983 claim. In Johnston v. Harris County Flood control

14

Dist., 979 F.2d 1111, 1113 (5th Cir. 1989), the Fifth Circuit qualified its position in Irby by holding that a plaintiff could pursue a remedy under § 1983 as well as under Title VII when the employer's conduct violates both Title VII and a separate constitutional or statutory right.

In addition to her equal protection claim, the plaintiff asserts a due process claim under § 1983. A § 1983 claim has two essential elements: a plaintiff must plead and prove that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution or federal laws." Perry v. Metropolitan Suburban Bus Authority, 390 F.Supp.2d 251 (E.D. N.Y. 2005)(citing Annis v. County of Westchester, 136 F.3d 239, 245 (2nd Cir. 1998). Therefore, as a threshold matter, the plaintiff must allege that the offensive conduct occurred "under color of state law." A private party such as Securitas may violate § 1983, but only if its joint participation with state officials justifies its characterization as a "state actor." Lugar v. Edwardson Oil Co., 457 U.S. 922, 941 (1982). Granger's complaint contains no such allegation. Her failure to allege that her employer acted in any respect other than as a wholly private actor is fatal to both her equal protection and due process claims under § 1983. Thus, the plaintiff cannot show an independent basis, or any basis at all, that would allow her to pursue a § 1983 claim.

Finally, the Court addresses the plaintiff's § 1985(3) claim

in Count II. The elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Griffin v. Breckenridge, 403 U.S. 88, 91 (1971). Unlike § 1983, which requires that the offensive conduct be "under color of state law," § 1985(3) has been interpreted to reach purely private conspiracies absent government action. Id. However, the question here is whether the alleged conspiracy deprived the plaintiff of the "equal protection of the laws," or of "equal privileges and immunities under the laws" within the meaning of § 1985(3).

Like § 1983, § 1985(3) creates no substantive rights; it merely provides a remedy for violation of the rights which it designates. Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 372 (1979). As with § 1983, rights created by Title VII do not fall under the protection of § 1985(3) because the complex procedural requirements for a Title VII claim would be impaired if a plaintiff were allowed to assert her claim within the remedial framework of § 1985(3). Id. at 378.

Granger's § 1985(3) claims are merely for deprivations of her rights under Title VII. Since she may not invoke § 1985(3) to redress violations of Title VII, the Court must construe her claims as falling under Title VII and subject to arbitration. See True v.

16

New York State Dept. Of Correctional Services, 613 F.Supp. 27, 32 (W.D. N.Y. 1984)("[P]laintiff has failed to plead a conspiracy regarding a federally protectable interest other than the discrimination in employment allegations which must be enforced under Title VII and not under section 1985(3).").

The Court therefore concludes that all of the plaintiff's claims against Securitas are subject to arbitration, and she must pursue her claims in the manner as provided in the arbitration agreement. This action shall be dismissed without prejudice as to defendant Securitas. As for defendants Kenneth Graves Apartments and Ronald Promise, neither of these defendants has been served with process in this action. Federal Rule of Civil Procedure 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Since the plaintiff filed her Amended Complaint on November 23, 2005, the 120-day time period for service expired on March 23, 2006. Pursuant to Rule 4(m), the Court may therefore either dismiss without prejudice the plaintiff's claims against these defendants or direct that service be executed within a specified time. The Court finds that the former is the more appropriate course. Under Rule 4(m), the court may not dismiss a complaint unless the party's failure to serve lacked good cause. The Court

17

shall therefore order the plaintiff to show cause for her failure to serve process; if good cause is not shown, the remaining defendants shall be dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED that the defendant Securitas Security Services USA, Inc.'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Litigation, and to Compel Arbitration **(docket entries 6 and 8)** is GRANTED IN PART AND DENIED IN PART as follows: the motion to compel arbitration is granted and the plaintiff must pursue her claims in the manner as provided in the arbitration agreement; the motion to dismiss the plaintiff's complaint as to defendant Securitas is granted, and Securitas is dismissed from this action without prejudice; the motion to stay litigation is denied;

FURTHER ORDERED that the plaintiff shall have ten (10) days from the date of entry of this Memorandum Opinion and Order to show good cause for her failure to serve process on defendants Kenneth Graves Apartments and Ronald Promise.  In the absence of good cause, said defendants shall be dismissed from this action without prejudice.

SO ORDERED, this the 23rd day of August, 2006.

<pre>
                                        S/DAVID BRAMLETTE
                                        UNITED STATES DISTRICT JUDGE
</pre>